## Searing and others *vs.* Searing.

Where debts are due to the wife at the time of her marriage, they belong to her, in case she survives her husband, although he may have brought a suit for such debts in their joint names, and recovered a judgment therefor; if the money had not been actually collected by him in his life time.

But where the husband receives a debt which was due to the wife at the time of her marriage, or novates the debt by taking a new security for the same, in his own name, his wife's right of survivorship is at an end ; and the new security taken by the husband belongs to his personal representatives.

Where it is necessary to bring a suit for the recovery of money in the name of the husband and wife jointly during coverture, the cause of action survives to the wife for her own benefit, if the husband dies first.

And it seems that where the husband takes a new security, in the name of his wife, for a debt due to her at the time of the marriage, it is not such a reducing of the debt into possession by him as to deprive his wife of the right to such new security by survivorship.

If a security is given to the wife during coverture, the husband may sue upon the contract in his own name, or he may bring a suit thereon in the names of himself and wife jointly, at his election.

Where the husband permitted his wife to receive monies due to her before coverture, and to re-loan them upon securities in her own name, and also agreed, upon her joining in a conveyance of his real estate so as to release her inchoate right of dower therein, that a certain portion of the proceeds of the sale might be received and loaned by her upon securities in her own

1841.

Searing
v.
Searing.

August 23.

name, which was done accordingly; *Held*, that the securities thus taken belonged to the wife, who survived him; and that she was not bound to account for them as the administratrix of her deceased husband.

THIS was an appeal from the sentence or decree of the surrogate of the county of Saratoga, upon the settlement of the account of the respondent as administratrix of the estate of Richard Searing, her deceased husband. And the only matter in dispute between the parties related to certain debts, for which she held securities in her own name at the death of the decedent; which debts the appellants, as the decedent's next of kin, claimed as belonging to his estate. These debts the respondent claimed as belonging to her in her own right, as the survivor of her husband. The debts were contracted and the securities taken therefor under the following circumstances:

At the time of the marriage of the respondent to her late husband, about $2200 was due to her in the state of Vermont, the proceeds of the sale of her real estate there. The monies thus due to her, the husband permitted her to receive and to re-loan upon new securities, in her own name, and to re-invest the same from time to time; except certain portions of the money which she applied in payment of his debts. In 1835, when the decedent was about to sell his farm in which she had an inchoate right of dower, she declined executing the deed, and relinquishing her interest in the farm, unless a certain portion of the purchase money was appropriated for her use. He thereupon agreed that $2000 of the proceeds of the sale should be set apart for her use, and should be deposited in the savings bank, in her name; which was done accordingly. And this sum, he also permitted her to draw out from time to time and to loan upon securities in her own name, and to retain the possession of the securities thus taken for her own benefit. The securities taken in her name for the monies thus loaned, which were in her possession at the time of the death of her husband, and which he had never claimed or attempted to reduce to possession in his life time, the surrogate decided belonged to her in her own right; and that

she was not accountable therefor, to the next of kin, as a part of the estate of the decedent.

*William Hay*, for the appellants. The securities mentioned in the surrogate's return, as taken by the respondent in her own name, and claimed by her in her own right as survivor of her husband, were part of the decedent's legal estate. The proceeds of her Vermont property, belonged, by virtue of her marriage, to her husband, who had reduced such proceeds to his actual possession. The same may be said of the $2000, part of the purchase money of her husband's farm allotted to her ; the agreement in relation to which, between her and her husband, was at law nugatory. But if not, as soon as she received the money, it became her husband's property. And his right to it, followed it through all its changes. The notes given to the respondent, for this money, were his property. (2 *Cowen*, 599. 7 *John Ch. Cas.* 244.) The surrogate is confined to the distribution of property as legal assets ; he can not disregard statutory preferences and divide the assets equally among the creditors of every class. He had no power to enforce the equitable claims of the respondent, if she had any. Chancery alone has jurisdiction of such claims. (4 *Paige*, 64. 6 *Id.* 366.) Neither can a surrogate carry into execution, specifically, a post nuptial agreement entered into between a husband and wife. His court is a court of law ; a court of peculiar and special jurisdiction. He has no equitable powers.

*W. L. F. Warren*, for the respondent. The $2000, part of the sale price of the farm was, in equity, the separate property of Mrs. Searing. The agreement by which it was set apart to her use was founded on a good consideration. A post nuptial agreement between husband and wife, where the consideration was a relinquishment of her dower and the property was set apart to her use, has been decided in this court to be binding on the husband. (*Garlick* v. *Strong*, 5 *Paige's Rep.* 440.) This is a stronger case than

the one cited. In addition to the relinquishment of her dower, her separate property from Vermont entered partly into the consideration. The notes and obligations taken for the $2000 do not alter the property. They were taken in the name of Mrs. Searing with her husband's assent and held by her—showing a clear intent on his part, that they should be considered her separate estate. He never reduced them to his actual possession in the sense required by Chancellor Kent, in *Schuyler* v. *Hoyle*, (5 *John. Ch. Cas.* 209.) The intention of the decedent to make them his own property must be strong. (*Idem*, 211. 2 *Kent's Com.* 137. 10 *Wend.* 337. 15 *Id.* 168.) The result of these cases show that the $2000 survived to Mrs. Searing. The surrogate had jurisdiction over the equitable claim of Mrs. Searing to the $2000. It is true his powers are created by statute. (2 *R. S.* 220.) This statute authorises him *to settle the accounts of executors and administrators ;* also *to administer justice in all matters relating to the affairs of deceased persons according to the provisions of the statutes of this state.* Unless the surrogate has power to adjust equitable claims of this description, in many cases he could not *settle* the accounts of administrators. His jurisdiction must embrace equitable as well as legal claims ; otherwise he would be limited to a particular accounting as to items strictly legal. This court has decided that the surrogate's powers extend to equitable claims. (5 *Paige's Rep.* 135. 6 *Id.* 520, 21. 7 *Id.* 115, 591. 4 *John. Ch. Cas.* 410.)

THE CHANCELLOR. It is not material in this case to inquire whether the claim of the respondent to the debts in controversy was a legal right, or one which was purely equitable. For in either case the result must be the same when she is called upon to account before the surrogate. (*Gardner* v. *Gardner*, 7 *Paige's Rep.* 112. *Jumel* v. *Jumel*, *Id.* 591.) As to the debts due to the respondent at the time of her marriage, there does not appear to have been any agreement between her and her husband that she

should have the exclusive right to the same, notwithstanding her coverture ; so as to deprive him of his marital rights over the same as a part of her personal estate. The question, therefore, whether they belong to her by right of survivorship, or are a part of his personal property to be distributed according to the statute, turns upon the point whether the husband can be considered as having reduced the debts to his possession, as he had the undoubted right to do, in his lifetime.

Debts due to the wife at the time of her marriage belong to her if she survives her husband ; even where he has brought a suit and recovered a judgment in their joint names, if the money has not been actually collected. On the contrary, if the husband receives the amount of the debt, or novates such debt by taking a new security for the same in his own name, as he has a right to do if he thinks proper, the wife's right of survivorship is gone ; and the new or substituted security for the debt belongs to his personal representatives. In the first case the suit for the recovery of the money must be brought in the name of the husband and wife jointly ; and where that is the case, if she survives the cause of action also survives to her for her benefit. But in the case of a new security taken in the name of the husband only, the right of the wife is entirely extinguished ; and the suit thereon must be brought in the name of the husband, or in that of his personal representative in case of his death. In the case of a new security taken in the name of the wife, after marriage, there appears to have been some doubt whether the suit should be brought by the husband and wife jointly, so as to give the cause of action to the wife in case she survived her husband, or in the name of the husband only. The better opinion, however, appears to be that the taking of a new security in the name of the wife is not an absolute reducing of the debt to possession, so as to deprive her of the right to the same in case of survivorship ; but that the husband, during his life, may bring a suit thereon in his own name or in the joint names of himself and wife at his election.

Thus in *Hilliard and wife* v. *Hambridge*, (*Alleyn's Rep.* 36,) in a suit upon a promise made to the husband and wife to pay an annuity to her during the coverture, it was objected in arrest of judgment, that as the promise was made after the marriage, the suit should have been brought by the husband alone. But the court of king's bench held that the husband might elect to bring a suit in his own name upon the promise, or in the name of himself and wife jointly. So in *Brashford* v. *Buckingham and wife*, upon a writ of error in the exchequer chambers, (*Cro. Car.* 77,) where a judgment had been recovered in a suit by the husband and wife, upon a promise to the wife after coverture, founded on a meritorious consideration proceeding from her, it was held that the suit was well brought in the names of both; and that such an action would survive to the wife. (*See also Prat and wife* v. *Taylor*, *Cro. Eliz.* 61; *Fountain* v. *Smith*, 2 *Siderf. Rep.* 128; *and Brett* v. *Cumberland*, 3 *Bulst. Rep.* 163.) And in the more recent cases of *Philliskirk* v. *Pluckwell*, (2 *Maule & Selw. Rep.* 393,) the court of king's bench decided that a joint action in the name of the husband and wife might be brought upon a promissory note made payable to the wife during coverture. Dampier J. in that case refers to the decision in *Day* v. *Pargrave*, in Trinity Term, 14 Geo. 2, where Chief Justice Lee said that in case a bond was given to the wife during coverture, no action would lie for it by the wife solely; but that the husband and wife might have a joint action thereon during their lives, or the husband might bring an action in his own name during coverture; yet if he did not, it survived to the wife. And the husband in that case having outlived his wife, it was held that a suit upon the bond was well brought by him, as the administrator of the wife; for it would have survived to her if she had outlived her husband.

The case of *Nash* v. *Nash*, (2 *Mad. Rep.* 133,) decided by Sir Thomas Plumer, as vice chancellor, appears to be directly in point to sustain the claim of the respondent in the case now under consideration. There the father gave

1841.

Scaring
v.
Searing.

to his daughter, a feme covert, a check upon his bankers for £10,000, which she presented, and took from them a promissory note for the amount, payable to herself upon demand. She afterwards delivered the note to her husband, who received £100 in part payment from the bankers and gave receipts therefor. Upon the residue of the note he continued to receive the interest during his life, but died without having received the remaining £9000 of the principal due thereon, leaving his wife surviving. In this state of things a question arose and was discussed before the vice chancellor, between the wife and the husband's next of kin, whether the amount remaining due upon the note at the time of his death survived to her or belonged to his personal estate. And his honor decided that the note was a chose in action, which the husband had not reduced into his actual possession by the collection of the money thereon ; or by bringing a suit in his own name during coverture, and that the wife as survivor was therefore entitled to the monies due thereon, for her own use.

The execution of the deed for the Stewart farm by the wife constituted a valid consideration for the part of the purchase money which was agreed to be set apart and invested for her separate use, so as to make it the duty of a court of equity to protect that interest, even against the marital claims of the husband to the money deposited in the savings bank for her separate use, in case he had attempted to reduce it to possession in violation of his agreement. (*Garlick* v. *Strong*, 3 *Paige's Rep.* 440.) The meritorious consideration, then, of all the securities standing in her name, at the death of the husband, proceeded from her. And it is evident, from the facts stated in the return of the surrogate, that the husband never attempted to reduce these securities to possession or to deprive her of the benefit thereof during his life ; but, on the contrary, that he elected to treat them as her property. She is therefore entitled to them, by survivorship, at law as well as in equity.

The sentence and decree of the surrogate is, for these reasons, affirmed with costs.