BAILEY JOHNSON & wife *vs.* ROBERT LUSK & others.

October Term, 1872.

HUSBAND AND WIFE—WIFE'S RIGHT OF SURVIVORSHIP, IN NOTES.—Promissory notes taken by a husband payable to himself and wife, upon a consideration passing from him alone, in the absence of evidence showing a different intent, survive, on his death, to the wife.

*T. T. Smiley*, for complainants.

*N. S. Brown*, for defendants.

THE CHANCELLOR:— The point submitted to the decision of the court in this case, arises upon the following facts: On the 4th day of November, 1863, Leroy C. Colman sold to H. C. Jenkins a lot in Nashville for $10,-000, payable in ten equal annual instalments, for which Jenkins executed his notes, payable to "Leroy C. Coleman and wife, Caroline Coleman." The deed of conveyance to Jenkins was also executed by both Coleman and wife, although the lot itself was the absolute property of Leroy C. Coleman, having been owned by him from before the date of his intermarriage with the said Caroline. A few days after the sale to Jenkins, Coleman died and his will was admitted to record by the county court of Davidson county, at its December term, 1863, and Robert Lusk, the executor named therein, qualified as such, and took possession of the Jenkins' notes as part of the assets of the testator's estate, and proceeded to administer them as such. The will bears date the 8th of April, 1850, and was made, as shown upon its face, in contemplation of the testator's marriage with Caroline Smith, then a widow with four children. The will, after directing his debts to be paid out of

the proceeds of the sale of his personal property and the debts owing to him, gives "the one half of the remainder of his estate, both real and personal," to his own children, and to the said Caroline and her children, the other half. After Coleman's death, his widow intermarried with complainant, Bailey Johnson, and, on the 25th of August, 1866, the bill in this case was filed by Johnson and wife and her children, claiming, among other things about which there is no controversy, that the Jenkins' notes, upon the death of Coleman, belonged to his widow, and did not pass, under the will, to the executor. The bill alleges that Leroy C. Coleman, after the sale to Jenkins, delivered the notes to complainant, Caroline, who kept them until after his death, and then, from motives of delicacy growing out of her relation to the defendant, John Coleman, sole surviving son of Leroy C. Coleman, although advised by her counsel that she was entitled to them, delivered said notes to defendant Lusk, as executor. These allegations of the bill are expressly denied by the answer, and there is no proof to sustain them. On the contrary, what proof there is tends to show that there was no declaration of trust as to these notes, in favor of his wife, made by Leroy C. Coleman, either by word or act; for, it appears from the testimony that she talked at one time of attempting to set the sale aside, on the ground of the incapacity of her husband at the time it was made; and the dates show that this bill was not filed until nearly three years after her husband's death, and the probate of the will. If, therefore, the rights of the parties depended upon the establishment of a trust in these notes, for the sole and separate use of the complainant Caroline, I should be compelled to hold that the case had not been made out.

But the fact still remains that the notes of Jenkins were taken, payable to Coleman and wife. No reason is suggested in the pleadings, or shown in the proof, why the wife joined her husband in the conveyance of the lot to Jenkins—she having, so far as appears, no interest, legal or equitable, therein—nor why the notes were made payable to her as well

as her husband. The silence of the record on these points is rather remarkable, the proof showing that the conveyance was drawn by counsel, and the facts attending the transaction must have been known to several persons. But so it is, and the question for the court to decide is, what is the legal effect of the mode in which the notes were taken? Is the burden of proof on the complainant Caroline to show something more than what appears on the face of the paper, or is the onus on the executor to show that his testator did not intend the *prima facie* legal consequences of his act? Upon looking into the authorities, I find them all one way, and the law altogether clear and free from doubt. "There is a settled rule," says C. J. Jarvis, in *Dalton* v. *Mid. R. R. Co.*, 20 Eng. L. & Eq. 275, "That a married woman, though incapable of making a contract, is capable of having a chose in action conferred upon her, which, upon the death of her husband, will survive to her, unless he shall have reduced it into possession by doing some act of his own." And the authorities leave no room for doubt that such a chose in action may be conferred upon the wife by the husband, as well as by a stranger. The subject is discussed, and the authorities cited in Wms. on Exrs. 639–640. A single paragraph will show the extent to which the courts have gone. In *Lucas* v. *Lucas*, 1 Atk. 271, Lord Hardwicke "proceeded to decree that the defendant in the cause, a widow, was entitled to £1,000 South Sea annuities, transferred by her husband in his lifetime, into the name of his wife, as a valid gift against the husband and his representatives. So stock purchased by a man in the name of himself and wife, was, on his death, held by the Vice Ch., Sir John Leach, to go to her as the survivor. *Lorimer* v. *Lorimer*, Ms. note to 10 Ves. 367. And in a similar case, Lord Eldon, Ch., said it was *prima facie* a gift to her in the event of her surviving, *unless evidence of contemporaneous acts showing a contrary* intention were produced. *Wilde* v. *Wilde*, Ms. Acc. 5, Sim. 35; 2 M. & Ky. 262; 1 Beav. 426; Id. 605. So, when the husband lends out moneys, upon securities taken in the names of

himself and wife, and dies, the wife is entitled by survivorship, if there are sufficient assets without this money to pay debts. 2 Vern. 683. And, generally, where a husband purchases personal property in the name of his wife, or in their joint names, it will be presumed, in a case clear of fraud, to have been intended as an advancement and provision for the wife, and on surviving her husband she will be entitled, unless he has aliened the property in his lifetime. 2 Vern. 67; 8 Ves. 199." All the authorities, and without exception so far as I can see, agree upon the principle thus enunciated. Chancellor Walworth has shown, in *Searing* v. *Searing*, 9 Paige, 283, that the same principle prevails in America. See also 6 Cush. 20, and other Mass. cases; 2 Red. Wills. 173, 177. The cases seem to take for granted that it makes no difference that the consideration of the chose in action comes from the husband, and some of them, among others, *Dummer* v. *Pitcher*, 5 Sim. 35, show that precise fact. The statement of facts in that case expressly recites that the husband "being possessed of certain annuities, transferred them into the names of himself and wife" and, by his will, bequeathed all his funded property or estate, of what kind soever, to trustees, in trust for his wife for life, and, after her decease, in trust—among other things—to pay certain legacies of 4 per cent. stock, amounting within £50 to the stock of that description, which he had so transferred; and he gave the residue of his estate to A. and B. He afterwards purchased further sums of five per cents. in the names of himself and wife, and died, having no stock except that before mentioned, exclusive of which his property was not sufficient to pay his legacies. *Held*, that the wife, on her husband's death, became absolutely entitled to the stock. This case is strongly analogous to the one before us, for the testator died in 1817, and the widow died in 1830, having, in the meantime, as was contended, acted as if the stock passed under the will. The counsel, on behalf of the legatees, urged that, " the testator, when he made the transfers of the stock, had both legal and equitable ownership in

it, and therefore the inference was that he intended his wife to be a trustee of it; and, at all events, that sufficient ground was shown for an inquiry as to the circumstances under which the stock was transferred into the joint names of husband and wife. The court says : " On one side it has been alleged that the wife was a trustee for the husband, of the sums of stock which he caused to be transferred into their joint names; and, on the other, that the husband did not intend his wife to hold the stock subject to any trust. Now, *the onus of proving the existence of a trust, lies on those who allege it.* But in this case there is nothing to show that the husband intended that the transfers should have any operation but what they legally had; and, consequently, it is not competent to me to direct any inquiry as to the circumstances under which those transfers were made. My opinion, therefore, is, that Mrs. C., by surviving her husband, became absolutely entitled to the sums of stock."

I find nothing in conflict with these rulings, and must, therefore, hold that a chose in action taken by a husband in the name of himself and wife, upon a consideration passing from himself alone, in the absence of all proof showing a different intent, survives to the wife, and that, consequently, the complainant Caroline is, in this case, entitled to the Jenkins notes as against the executor, legatees and devisees of Leroy C. Coleman.

Whether the result reached meets the ends of justice, may be doubtful, but the fault, if fault there be, rests, not with the court. The preparation of a case belongs to the parties, and if they fail to furnish sufficient evidence upon which to ground a decision, the ordinary presumptions of law must prevail. The act of the husband in this case was *prima facie*, in the language of Lord Eldon, already cited, " a gift to her in the event of her surviving." The onus of proving that the husband intended that the notes in controversy should have any operation other than what they legally had, is on those who set up the claim. In the absence of such proof, the court cannot resort to conjecture to deprive the

surviving wife of a legal right. Decree accordingly, costs to be paid out of the estate.

NOTE.—This case, and the next succeeding case, were decided by Judge Cooper, as special Chancellor, before he became the regular Chancellor; but as they were both affirmed by the Supreme Court, and involve questions of importance, it has been deemed proper to include them in the present volume. This case is affirmed in 6 Cold. 113.