BEALS' EXECUTOR *vs.* STORM and others.

1. The proceeds of sale by a married woman of her contingent dower in her husband's lands, are regarded in equity as her separate estate, and will be secured to her against her husband and his creditors.

2. Real estate purchased by her with such proceeds, she has a right to hold as against her husband and his creditors, and equity will protect it.

3. Under the act of 1864, the will of a married woman is valid without her husband's assent, except as to his legal rights in her property; with his assent, it is absolutely valid.

4. The assent by a husband to his wife's will is an effectual waiver of his claim to her property after decease, a renunciation of his reserved rights, and is conclusive not only against him, but against his creditors also.

On final hearing, on bill and answer.

*Mr. A. Q. Keasbey,* for complainant.

*Mr. J. W. Taylor,* for defendants.

THE VICE-CHANCELLOR.

This suit has, by the death of the defendant, Isaac T. Storm, since its commencement, practically become a contest between the executor of one of his creditors, and his daughters, by his late wife, Ann, and the children of his daughters. The cause is brought to a hearing on bill and answer. The controversy is in respect to property which the defendants claim to have been the separate estate of Mrs. Storm, at the time of her death. The property in question appears to be both real and personal, and is in this state. The facts, according to the pleadings, appear to be as follows:

On the 26th day of November, 1851, Thomas Beals recovered a judgment against the defendant, Isaac T. Storm, in the Supreme Court of New York, for $5156.41, on a bill of exchange; and on the 20th day of March, 1852, he recovered another judgment against Storm, in the same court, for $5350.29, also on a bill of exchange, on both of which bills Storm was liable as an accommodation endorser. Beals having died, leaving a will, Thomas S. Beals, the complainant, in November, 1865, proved it before the surrogate of the county of Essex, and letters testamentary were issued to him thereon. He then brought an action in the Supreme Court of this state, on the two judgments above mentioned. In that suit he recovered a judgment on the 31st day of January, 1866, for $20,969.02. An execution was issued thereon to the sheriff of Essex, who returned it wholly unsatisfied. Isaac T. Storm was married to his wife, Ann, in 1813. She

died in the early part of 1865. He, as before stated, died since the commencement of this suit. Prior to 1851, he and his wife resided in New York. In that year they removed to this state, where they continued to live for the rest of their lives. Prior to 1851, Storm had been a prosperous merchant in the city of New York, and at that date had retired from active business, possessed of a large estate, mainly real, being valuable stores and dwelling-houses in that city, and other real estate of less value elsewhere in the state. In that year, he, having become liable as an accommodation endorser on commercial paper, to a very large amount, greater than his whole estate, and having thereby become insolvent, made an assignment of his property for the benefit of his creditors, pursuant to the laws of New York.

His wife did not join in the conveyance of the real estate. The persons who, through the grant of her husband, became owners of his interest in the different portions of the real estate, afterwards, in order to free the property from the encumbrance of her inchoate right of dower therein, induced her to sell and release her right, by paying to her, for her separate use, the fair pecuniary value thereof. The proceeds of such sale and release were, and continued to be, held by her as her separate estate. Her entire estate, at her death, was exclusively the result and accumulation thereof; excepting certain shares of stock, which passed to her by an executed gift from her husband, when he had ample means and was out of debt, and which stood in her name, and were held by her as her separate estate, until her death.

One of the tracts of land mentioned in the bill, was conveyed to her in 1851, the other in 1858. Shortly before her death, and in January, 1865, she made her last will and testament, as set forth in the answer, whereby she gave her estate, real and personal, to her executors, Hugh B. Rathbun and John Calvin, therein named, in trust, to apply the rents, interest and income to the use of her husband, during his life. After his death, provision is made for the support of her two daughters during life, and at their death the remainder of the

estate is to be invested for the benefit of her grandchildren; and there are other provisions for after-born grandchildren. The will was duly proved on the 21st of March, 1865, by the executors. The will was, as appears by the answer, which was sworn to by Storm, made and executed by Mrs. Storm, with the consent thereto of her husband, and was on his part ratified and confirmed. The bill and answer both state that it was duly admitted to probate.

Of the estate of which Mrs. Storm died seized and possessed, and which the complainant, by this suit, seeks to subject to the satisfaction of his judgment against her husband, part was acquired by her from her husband when solvent, by *bona fide* executed gift; part from the purchasers of her inchoate right right of dower in his real estate, sold to them by his assignee in insolvency; and the rest is the accretion and augmentation thereof from investment. It appears, from the pleadings, that she regarded and enjoyed, and was permitted by her husband to regard and enjoy, until her death, all this property as her own separate estate, in all respects. It also appears that, at least so far as the complainant's testator was concerned, (and for aught that appears so far as all the other creditors of her husband were concerned, also,) she was permitted to hold and enjoy this property as her separate property, not liable for the debts of her husband. The last of the Beals' judgments was recovered in New York, in 1852. No action appears to have been taken to subject the property held by Mrs. Storm to the payment of those judgments, or either of them, until after her death in 1865, and then, nearly a year after her decease, the complainant, having proved Beals' will in this state, brought suit here on the judgments.

The questions raised on the briefs of the counsel are in respect to the money received by her for her inchoate right of dower, and the validity of her will as against her husband's creditors. The money received by her for her inchoate right of dower was her separate property. *Simar* v. *Canaday*, 53 *N. Y.* 298; *Sykes* v. *Chadwick*, 18 *Wall.* 141; *Bartlett* v. *Van Zandt*, 4

*Sandf. Ch.* 396. A court of equity would have protected it against her husband and his creditors. *Garlick* v. *Strong*, 3 *Paige* 440.; *Searing* v. *Searing*, 9 *Paige* 283. It was money received by her in exchange for that which was in no sense her husband's property, but which, by the provision of the law, was hers alone, and peculiarly hers, given to her as against her husband, and all claiming under him, for her own support after his death. Her contingent dower, which she so sold, was an encumbrance on his real property. *Carter* v. *Denman*, 3 *Zab.* 260 ; *Rawle on Covenants for Title* 109–111. She could not have been compelled to remove it. When it was released, the law required, in order to make the release valid, that she be examined apart from her husband as to her freedom from coercion. It was not only a right, but it was property, her separate property. It had pecuniary value to her. It had pecuniary value, also, to those who bought it. That her husband joined her in the conveyance does not change the character of the thing conveyed. It was a legal requisite to effectuate her bargain with the purchaser, that her husband, in order to validate her conveyance, should join in the deed. His joining in the deed no more made the interest sold and conveyed, his property, than his joining her in a deed for her land, owned in fee simple at the time of her marriage to him, would have made that property his.

And again, when the release of her contingent dower was executed, she resided in New York. The married women's act of that state, as it then stood, provided, that any married woman might take, by inheritance, or by gift, grant, devise, or bequest, from any person, other than her husband, and hold to her sole and separate use, and convey and devise any real or personal property, or any interest or estate therein, &c. ; and the same should not be liable for her husband's debts. That statute being a remedial one, should be construed liberally. The money paid to Mrs. Storm for her contingent dower may be justly and fairly regarded, in applying the statute, as having been received by her by grant, notwithstanding the fact that money, delivered in consideration

of or exchange for a commodity, or for land, is ordinarily said to be paid, not granted. The money received by a married woman, in exchange for or in consideration of her separate estate, would not lose its claim to protection under that statute, because, strictly speaking, it was not received by grant, but by way of payment. Had the consideration of her release been the conveyance of land, or assignment of chattels to her, there would have been no room for question as to her right to protection in respect to it; there should be no more when the consideration was received by her in money, retained and invested in her own name, for her sole and separate use. If, as the complainant's counsel insists, she had nothing to sell, and, in fact, sold nothing when she released her contingent dower, then the money she received may well be regarded, in applying the statute, as having been received by gift from those in whose favor she executed the releases. But it is not necessary to have recourse to the construction of the statute in this case. The adjudicated cases leave no doubt, that the proceeds of the sale by a married woman of her contingent dower in her husband's lands, are regarded in equity as her separate estate, and will be secured to her against her husband and his creditors. Mrs. Storm came to this state in 1851, bringing with her her property, which she invested here in her own name, and in all things claimed, treated, and enjoyed it, and its increase, as her separate property. It being, in fact, her separate property, she had a right so to invest and hold it, as against her husband and his creditors, and it would have been protected accordingly. *Story's Eq. Jur.*, § 1380; *Quidort's Adm'r v. Pergeaux*, 3 *C. E. Green* 472; *Henry ats. Dilley*, 1 *Dutcher* 302.

But it is insisted that, notwithstanding the act of 1864 and the assent of her husband, Mrs. Storm could not, by will, make any disposition of her property as against her husband's creditors. As to her real estate, this question has no importance. Both she and her husband are dead, and in the absence of any devise of her real estate, it would go to her

heirs.   As to her personal estate, her will is valid and
effectual.   It was made with the consent of her husband, and
has been duly admitted to probate.   Before the passage of
the act of 1864, a married woman could, with the consent of
her husband, make a valid will of her personal property.
*Emery* v. *Neighbour*, 2 *Halst.* 42; *Van Winkle* v. *Schoon-
maker*, 2 *McCarter* 384.   The act of 1864 removed the disa-
bility of married women to make wills, but at the same time
saved the rights of their husbands in their estates.   Under
it, the will of a married woman is valid without her hus-
band's assent, except as to his legal rights in her property.
With his assent, it is absolutely valid.   In the present case,
the property devised and bequeathed was property over
which her husband, in her lifetime, had no control, and which
his creditors could not have reached for the payment of his
debts.   *Act of* 1852, § 2.   *Henry ats. Dilley, ubi supra.*   His
assent to her will was an effectual waiver of his claim to her
property after her decease, a renunciation of his reserved
rights, and is conclusive not only against him, but against
his creditors, also.   *Silsby* v. *Bullock*, 10 *Allen* 94.

The bill will be dismissed, with costs.